■ MAX DEAN, Appellant, v JAMES McHUGH CONSTRUCTION COMPANY, Respondent.—Order unanimously reversed, without costs, and matter remitted to Monroe County Supreme Court Special Term, for further proceedings in accordance with the following memorandum: Plaintiff Max Dean appeals from an order which required him to increase an undertaking which he had previously furnished pursuant to CPLR 6212 (subd [b]) in connection with his attachment of funds of defendant-respondent James McHugh Construction Company. Dean commenced his action against McHugh in 1973, alleging breach of contract and conversion in that McHugh wrongfully withheld funds owing to Dean under an oral agreement between the parties to share

profits realized on certain construction projects. McHugh's answer interposed four counterclaims, all premised upon allegations that Dean had converted construction equipment and supplies in which McHugh had an interest. In February, 1974 we held (43 AD2d 1009) that Dean was entitled, upon filing an undertaking in the amount of $61,510.56, to attach a debt, in an amount then thought to be $525,000, owing from the City of Rochester to McHugh. The amount of the undertaking was arrived at by taking the sum of the following figures: $20,760.56 to reflect Sheriff's poundage fees; $25,000 to reflect estimated counsel fees in defense of the action; $15,750 to reflect damages for loss of use of the attached funds. The latter figure was based primarily on McHugh's representation that it proposed to borrow funds at 12% to replace the attached funds. We estimated that an interest differential of 3% would fairly reflect "the difference between the cost of borrowing and the interest to be earned by the attached funds" (43 AD2d 1009, 1010) and we therefore adopted the figure of $15,750, which is 3% of $525,000. Subsequently, the parties stipulated that the attachment would be effected without the Sheriff's intervention, thus obviating the need for Sheriff's fees and allowing the undertaking to be reduced to $40,750. The parties further stipulated that the sum to be attached was $422,809.34, rather than the $525,000 originally estimated, and that the funds would be deposited as the parties' attorneys should agree. Special Term's order of attachment, entered September 13, 1974, incorporated the terms of the stipulation. That order remained undisturbed until October 14, 1976 when Special Term, upon McHugh's motion pursuant to CPLR 2508, ordered the undertaking increased to $107,750, comprised as follows: $40,750, representing the original undertaking; $30,000 to reflect two years of additional interest on the sum attached, calculated by using the interest differential of 3%; $12,000 reflecting additional counsel fees for all pretrial proceedings; and $25,000 reflecting additional counsel fees for preparation and conduct of the trial. We conclude that the order should be reversed and the matter remitted for further proof as to counsel fees and interest, absent an appropriate stipulation by the parties. In fixing the original undertaking in this case, we held that because "the only method available to defendant to regain possession of its attached property will be by a successful defense of the action", counsel fees incurred in such defense "will be 'sustained by reason of the attachment' and thus properly included within the ambit of the undertaking" (43 AD2d 1009, 1010). The same is not true, however, of counsel fees incurred in prosecution of the counterclaims, and it appears that a substantial part of the discovery in this case concerned the counterclaims. Accordingly, there should be a hearing to determine what part, if any, of McHugh's already-paid and estimated future counsel fees are attributable solely to the prosecution of the counterclaims. The amount of the undertaking should not include such fees. We next consider the interest component of the undertaking. Where a party is deprived of the use of his funds through attachment, there is a "presumption of damage, measured by the legal rate of interest" (*Subin v United States Fid. & Guar. Co.,* 12 AD2d 49, 51; cf. *McNaughton v International Diesel Elec. Co.,* 286 App Div 1021). This presumption may be rebutted by proof in mitigation of damages, such as by showing that the funds earned interest during attachment, in which cases damages will be measured by the difference between the legal interest rate and the rate of earnings of the attached funds, (see, e.g., *Richman v Richman,* 52 AD2d 393, 395). We do not agree, however, with appellant's assertion that the legal interest rate necessarily defines the upper limit of recoverable damages for loss of use of attached funds. Although *Richman (supra)* seems to state that

rule (p 395), the court cites only *Northampton Nat. Bank v Wylie* (52 Hun 146, 149–150, affd without opn 123 NY 663), and we do not read *Northampton* as requiring such a result. It is true that the *Northampton* court measured damages by reducing a 6% interest rate by the 2½% rate at which the attached funds earned interest in a bank account. However, that measure was employed not because 6% was the legal rate, but rather because 6% was the rate at which the defendant in that case proved he could have earned interest but for the attachment. We perceive no reason why a party who is wrongfully deprived of the use of his funds may not recover damages representing more than the legal interest rate, provided that he can prove that such damages were actually sustained as a proximate result of the deprivation. Such proof might consist, for example, of a showing that the defendant had to borrow at very high interest in order to maintain his cash flow position. The damages estimate that we applied in fixing the original undertaking in this case was not inconsistent with the foregoing principles, because we had before us information as to the respondent's borrowing plans which warranted a departure from the presumption that damages accrue at the legal rate of interest. It is no longer necessary, however, to estimate possible damages on the basis of assumed data, because the actual earning history of the attached funds, as well as respondent's borrowing history, should now be subject to accurate proof. Accordingly, upon remand Special Term should take proof as to actual damages due to loss of use of the attached funds in accordance with the principles outlined above. If the parties fail to submit such proof or to stipulate, the presumption of damages at the legal interest rate should prevail and the damages component of the undertaking should be adjusted accordingly. (Appeal from order of Monroe Supreme Court—undertaking.) Present—Marsh, P. J., Moule, Dillon, Goldman and Witmer, JJ.